UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
TYRONE GRAHAM,

                 14-CV-10092 (VEC)

         Plaintiff,

                 **FIRST AMENDED**
  -against-              **COMPLAINT**

THE CITY OF NEW YORK,         **PLAINTIFF DEMANDS**
UNDERCOVER SHIELD NUMBER 39,     **A TRIAL BY JURY**
DETECTIVE KEITH CARPENTER (TAX 932419),
DETECTIVE PAUL MCCANN (TAX 930682), and
DETECTIVE ROBERT FRANK (TAX 940159),

         Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

    Plaintiff, Tyrone Graham, by his attorneys, Reibman & Weiner, as and for his First Amended Complaint, hereby alleges as follows, upon information and belief:

### PARTIES, VENUE, and JURISDICTION

    1.  At all times hereinafter mentioned, plaintiff, Tyrone Graham, was an adult male resident of Bronx County, within the State of New York.

    2.  At all relevant times hereinafter mentioned, defendant, City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

    3.  At all relevant times hereinafter mentioned, defendant, UNDERCOVER SHIELD NUMBER 39, hereinafter referred to as "UC 39," was an adult male employed by the City of New York as a member of the NYPD, whose identity is currently unknown to the

1

plaintiff. UC 39 was working undercover with the NYPD and in his official capacity as an employee of the City of New York at the time of the subject arrest, and he is sued herein in his official and individual capacities.

4. At all relevant times hereinafter mentioned, defendant, DETECTIVE KEITH CARPENTER (TAX 932419), was an individual employed by the City of New York as a member of the NYPD assigned to Narcotics Borough Manhattan North. Detective Carpenter is sued herein in his official and individual capacities.

5. At all relevant times hereinafter mentioned, defendant, DETECTIVE PAUL MCCANN (TAX 930682), was an individual employed by the City of New York as a member of the NYPD, assigned to the 23rd Precinct Detective Squad. Detective McCann is sued herein in his official and individual capacities.

6. At all relevant times hereinafter mentioned, defendant, DETECTIVE ROBERT FRANK (TAX 940159), was an individual employed by the City of New York as a member of the NYPD assigned to Narcotics Borough Manhattan North. Detective Frank is sued herein in his official and individual capacities.

7. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

8. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Southern District of New York, where the plaintiff and defendant, City of New York, reside, and where the majority of the actions complained of herein occurred.

**RELEVANT FACTS**

9. On December 27, 2013 (the "Date of the Arrest"), at about 3:00 p.m.,

plaintiff was lawfully walking on 116th Street near its intersection with 5th Avenue in the County of New York, City and State of New York (the "Scene of the Arrest").

10. At or about this time, defendants, UC 39, Carpenter, McCann, and Frank arrived in plainclothes, on duty, and in an unmarked NYPD vehicle.

11. Without warning, the defendants exited their vehicle, approached plaintiff without any legal justification or excuse, and began searching and questioning plaintiff.

12. Plaintiff was not engaged in any suspicious or illegal activity, and the search revealed no evidence of any guns, drugs, or contraband.

13. Despite the absence of any evidence of wrongdoing on the part of plaintiff, and without any legal justification or excuse, the individual defendants then subjected plaintiff to excessive force by, in part, pushing him, grabbing him, and striking him on his body.

14. The defendants also slammed plaintiff's head to the ground, breaking his glasses.

15. The defendants continued to subject plaintiff to excessive force, in part, by kneeing him in his back and by twisting his arms behind his back.

16. Plaintiff was not engaged in any unlawful or suspicious activity, and repeatedly asked the defendants why they were beating and arresting him, and received no response.

17. As a result of defendants' actions, plaintiff sustained physical injuries.

18. Plaintiff was not engaged in any illegal or suspicious activity, and at no time did there exist any basis to utilize any level of force against plaintiff, much less the force

actually employed, nor could any of the defendants have reasonably believed that such force was necessary.

19. Without any explanation or justification, the defendants applied excessively tight handcuffs to plaintiff and formally arrested him.

20. At no time did plaintiff resist arrest or engage in any violent or threatening behavior.

21. Plaintiff was then taken to the station house of the 25th Precinct where he was held for several hours and searched.

22. The search revealed no evidence of any guns, drugs, or contraband.

23. Plaintiff was eventually transferred to New York County Central Booking where he was held for several more hours.

24. From New York County Central Booking, plaintiff was transferred to Bellevue Hospital to receive treatment for the injuries he sustained at the hands of the defendants.

25. Plaintiff was then transferred back to New York County Central Booking where he was arraigned on a criminal complaint made on the basis of false allegations supplied by each of the individual defendants named herein.

26. Pursuant to these false statements, false information, and fabricated evidence, plaintiff was charged with three counts of Criminal Sale of Controlled Substance in the Third Degree, one count of Criminal Possession of a Controlled Substance in the Fifth Degree, and one count of resisting arrest.

27. Notably, the criminal complaint on which plaintiff was arraigned, contains the names of three additional defendants. However, there are no criminal allegations specifically attributed to the plaintiff in this case. Simply put, it is not alleged in the criminal complaint that plaintiff possessed drugs or exchanged money for drugs. Yet, he was charged criminal sale and criminal possession.

28. Despite this fact that there are no allegations in the criminal complaint that plaintiff possessed or sold drugs, or otherwise facilitated the sale of the alleged drugs, or otherwise engaged in any criminal activity which would justify an arrest, he was nonetheless also improperly charged with resisting arrest.

29. Each of the individual defendants provided these false statements to the New York County District Attorney's Office and, upon information and belief, also eventually testified to these allegations in front of the Grand Jury, knowing that there was no basis to support these allegations.

30. These and other allegations, information, and evidence, were false and the defendants knew them to be false when he made them.

31. At plaintiff's arraignment, bail was set and he was sent to Rikers Island where he was improperly and illegally detained until February 14, 2014, when his charges were dismissed by the Grand Jury.

32. While plaintiff was in custody at Rikers Island, a grand jury voted to indict plaintiff. This indictment, however, was invalid pursuant to Criminal Procedure Law ("CPL") § 190.50 because plaintiff was denied his right to be a witness on his own behalf. Accordingly, the initial indictment was dismissed.

33. After plaintiff was afforded his right to testify in the grand jury proceeding, the grand jury voted to dismiss all charges. Accordingly, on February 14, 2014, the criminal action and all pending criminal charges related to the action were dismissed in favor of plaintiff. Per Certificate of Disposition Number 48043 and CPL § 160.60, "the arrest and prosecution shall be deemed a nullity and the accused shall be restored, in contemplation of law, to the status occupied before the arrest and prosecution."

34. The decision to arrest plaintiff was objectively unreasonable under the circumstances.

35. At no time did there exist sufficient cause to seize or arrest plaintiff, nor could the defendants have reasonably believed that such cause existed.

36. The factual allegations and testimony sworn to by each of the individual defendants named herein against plaintiff were materially false and deliberately made to justify the illegal arrest and assault by defendants against plaintiff.

37. At no time did defendants take any steps to intervene in, prevent, or otherwise limit the heretofore misconduct engaged in against plaintiff.

38. The individual defendants intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

39. That at all times relevant herein, the defendants were on duty and acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.


## FIRST CAUSE OF ACTION

40. Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

41. At no time did defendants have any legal basis for arresting or imprisoning plaintiff, commencing criminal process, or using physical force against him, nor was there any reasonable basis to believe said conduct set forth herein was lawful, reasonable, or otherwise appropriate.

42. Defendants willfully and intentionally seized, searched, detained, and arrested plaintiff without probable cause, and without a reasonable basis to believe such cause existed.

43. Defendants willfully and intentionally subjected plaintiff to physical force in excess of what was reasonable under the circumstances and caused plaintiff to suffer physical injuries, and did so without a reasonable basis to believe that such conduct was appropriate, reasonable, lawful, or necessary.

44. By so doing, the individual defendants, individually and collectively, subjected plaintiff to excessive force, false arrest and imprisonment, malicious prosecution, malicious use and abuse of process, unlawful searches of person and property, fabrication of evidence, denial of fair trial, and denial of due process, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

45. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

46. Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

47. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

48. Defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, use of excessive force, abuse of arrest powers, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

49. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of

the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

50. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

51. The aforementioned customs, practices, procedures, and rules of the City and the NYPD include, but are not limited to, the following unconstitutional practices:

   a. Using excessive force on individuals, including but not limited to those who have already been handcuffed;

   b. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

   c. Discouraging police officers from reporting the corrupt or unlawful acts of other officers;

   d. Retaliating against officers who report police misconduct; and

   e. Failing to intervene to prevent the above-mentioned practices when such intervention is reasonably available.

52. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following, non-exhaustive list of civil actions:

   a. *Thompson v. City of New York,* 10-CV-3603 (ARR) (SMG) (E.D.N.Y.)

   b. *Lotorto v. City of New York,* 10-CV-1223 (ILG) (JMA) (E.D.N.Y.);

   c. *Zabala v. City of New York,* 37711/2010 (Sup. Ct., Kings Co.);

    d.    *Ashe v. City of New York,* 09-CV-9696 (GBD) (THK) (S.D.N.Y.);

    e.    *Long v. City of New York,* 09-CV-9216 (AKH) (S.D.N.Y.);

    f.    *Moise v. City of New York,* 09-CV-9855 (DC) (JLC) (S.D.N.Y.)

    g.    *Taylor-Mickens v. City of New York,* 09-CV-7923 (RWS) (SD.N.Y.);

    h.    *Carmody* v. *City of New York,* 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207;

    i.    *McMillan* v. *City of New York,* 04-CV-3990 (FB) (RML) (E.D.N.Y.);

    j.    *Avent* v. *City of New York,* 04-CV-2451 (CBA) (CLP) (E.D.N.Y.):

    k.    *Smith* v. *City of New York,* 04-CV-1045 (RRM) (JMA) (E.D.N.Y.);

    l.    *Powers* v. *City of New York,* 04-CV-2246 (NGG) (E.D.N.Y.);

    m.    *Dotson* v. *City of New York,* 03-CV-2136 (RMB) (S.D.N.Y.);

    n.    *Nonnemann* v. *City of New York,* 02-CV-I0131 (JSR) (AJP) (S.D.N.Y.);

    o.    *Richardson* v. *City of New York,* 02-CV-3651 (JG) (CLP) (E.D.N.Y.);

    p.    *Barry* v. *New York City Police Department,* 01-CV-10627 (CBM) (S.D.N.Y.);

    q.    *Walton v. Safir,* 99-CV-4430 (AKH) (S.D.N.Y.);

    r.    *White-Ruiz v. The City of New York,* 93-CV-7233 (DLC) (MHD) (S.D.N.Y.);

    s.    *Ariza v. City of New York,* 93-CV-5287 (CPS) (E.D.N.Y.);

    50.    In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and

strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

53. Furthermore, more than half the time that the Civilian Complaint Review Board refers substantiated complaints against officers to the NYPD for disciplinary action, the NYPD either simply issues a verbal warning or drops the charges altogether.

54. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiff's rights in particular.

55. By reason thereof, defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

**DEMAND FOR A JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against defendants jointly and severally as follows:

    i.    on the first cause of action, actual and punitive damages in an amount to be determined at trial;

    ii.    on the second cause of action, actual damages in an amount to be determined at trial;

    iii.    statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

    iv.    such other relief as the Court deems just and proper.

**Dated: Brooklyn, New York**
            October 14, 2015

By:   /s/                       
James Sanborn (JS-4011)
Reibman & Weiner
*Attorneys for Plaintiff*
26 Court Street, Suite 1808
Brooklyn, New York 11242
Tel. (718) 522-1743
Fax (718) 522-6093